# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ZAUR ALESKEROV,                          :        Civil No. 1:26-CV-00420

                                         :

     Petitioner,                        :

                                         :

     v.                                 :

                                         :

CRAIG A. LOWE, *et al.*,                 :

                                         :

     Respondents.                       :        Judge Jennifer P. Wilson

## MEMORANDUM

Before the court is a petition for writ of habeas corpus under 28 U.S.C. § 2241 filed by Petitioner Zaur Aleskerov ("Aleskerov").  (Doc. 1.)  Aleskerov argues that he is being wrongfully detained without a bond hearing under 8 U.S.C. § 1225(b) and, instead, should be immediately released or provided an opportunity for a bond hearing under 8 U.S.C. § 1226.  For the reasons that follow, the court will grant Aleskerov's petition and order him released from custody.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Aleskerov is a 44-year-old native and citizen of Georgia.  (Doc. 1, ¶ 12.)  He entered the United States on or about January 1, 2024, without inspection.  (Doc. 8, p. 4.)[1]  On January 3, 2025, Aleskerov was served with a Notice to Appear in immigration court for removal proceedings under the Immigration and Nationality Act ("INA"), §§ 212(a)(6)(A)(i), because he was in the United States without

---

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

being admitted or paroled.  (*Id.*)  Aleskerov was released on his own recognizance pending his immigration proceedings.  (*Id.*)

On April 1, 2024, Aleskerov applied for asylum in the United States, which remains pending.  (Doc. 1, ¶ 18.)  On January 19, 2026, Aleskerov was arrested by Immigration and Customs Enforcement ("ICE") while leaving for work.  (*Id.* ¶ 15.)  Aleskerov was transferred to Pike County Correctional Facility on January 29, 2026, and has been detained there since that date.  (*Id.* ¶ 15.)  Aleskerov had a hearing scheduled before an immigration judge on March 2, 2026.  (Doc. 8-6, p. 2.)

On February 19, 2026, Aleskerov filed the instant petition requesting release from detention or a bond hearing against Craig A. Lowe, Senior Warden, Pike County Correctional Facility; Todd M. Lyons, Acting Director, ICE; Kristi Noem, Secretary of the United States Department of Homeland Security; and Pam Bondi, Attorney General of the United States (collectively, "Respondents").[2]  (Doc. 1.)  Respondents filed a response on March 6, 2026, and Aleskerov filed a traverse on March 11, 2026.  (Docs. 8, 9.)  Thus, this petition is ripe for review.

---

[2] Respondents, in a footnote, submit that the only proper respondent is Craig Lowe because he is the Warden of Pike County Correctional Facility.  (Doc. 8, p. 1 n.1.)  In this case, consistent with *Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004), Petitioner has named the Warden as a respondent. *Padilla*, 542 U.S. at 447 ("Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent.")  The court will not address an argument requesting dismissal of other Respondents when only raised in a footnote.

**STANDARD OF REVIEW AND JURISDICTION**[3]

Pursuant to 28 U.S.C. § 2241(c)(3), a district court may consider a writ of habeas corpus when an immigration detainee is "in custody in violation of the Constitution or laws or treaties of the United States."  Claims related to an immigration detainee's request for release from confinement must be brought as a habeas petition as these "claims fall within the 'core' of the writ of habeas corpus." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 167 (2022)).  Jurisdiction for "core habeas petitions . . . lies in only one district: the district of confinement."  *Id.* (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004)) (internal quotations omitted).  Aleskerov is detained at the Pike County Correctional Facility, which is within the Middle District of Pennsylvania.  *See* 28 U.S.C. § 118(b).

**DISCUSSION**

Aleskerov argues that he was improperly detained under Section 1225(b) of the INA, which relates to applicants for admission.  (Doc. 1; Doc. 9.)  Aleskerov submits that he should have been detained, if at all, pursuant to 8 U.S.C. § 1226(a) and provided a bond hearing because he is not an applicant for admission.  (Doc. 1; Doc. 9, pp. 4–11.)  Aleskerov requests the following forms of relief: a declaration

---

[3] Unlike prior habeas petitions before this court that presented similar issues, Respondents do not argue that the court lacks subject matter jurisdiction in this case, thus, the court will not address that issue here.  (*See* Doc. 8.)

that his continued detention violates the Due Process Claus, Section 1226(a), and 8 C.F.R. § 1236.1(d); and that the court issue a writ of habeas corpus ordering Aleskerov's immediate release or, alternatively, to provide him with a bond hearing before an immigration judge. (Doc. 1, p. 9.)

Respondents agree that Aleskerov is detained pursuant to Section 1225(b)(2)(A). (Doc. 8, p. 2.) They assert that Aleskerov falls within the statutory definition of "applicant for admission," he is properly detained under Section 1225(b)(2), and Section 1226(a) is inapplicable to him. (*Id.* at 15–42.) Respondents submit that the plain language of Section 1225(b)(2) requires detention of applicants for admission and that the section's reference to noncitizens "seeking admission" does not narrow the scope of Section 1225(b)(2). (*Id.* at 15–29.) They further argue that their interpretation of Section 1225(b)(2)(A) does not make Section 1226(a)'s discretionary detention authority superfluous and *Jennings* does not undermine Respondents' interpretation. (*Id.* at 29–44.) Respondents also assert that Aleskerov's temporary detention does not violate due process. (*Id.* at 38–42.) Alternatively, if the court wishes to grant Aleskerov's petition, Respondents request that the court order a bond hearing rather than releasing Aleskerov. (*Id.* at 42.)

Section 1225 of the INA is titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." 8 U.S.C.

4

§ 1225. It defines "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . ." *Id.* § 1225(a)(1). Section 1225(b)(2)(A) provides:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

Noncitizens subject to this mandatory detention may only be released while their removal proceedings are pending "for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288. The BIA recently decided *Matter of Yajure Hurtado*, 29 I. & N. Dec. 2016 (Sept. 5, 2025), wherein the BIA held that noncitizens who enter the United States without admission are subject to mandatory detention under Section 1225(b)(2)(A), and thus, immigration judges lack the authority to provide a bond hearing.

Conversely, 8 U.S.C. § 1226(a) provides, in relevant part:

> (a) Arrest, detention, and release
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
> > (1) may continue to detain the arrested alien; and
> > (2) may release the alien on—
> > > (a) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> > > (b) conditional parole; but

>(3) may not provide the alien with work authorization (including an 'employment authorized' endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

The parties agree that Aleskerov is detained pursuant to Section 1225(b)(2)(A) and neither party alleges that Aleskerov is subject to Section 1226(c).[4] (*See* Docs. 1, 8, 9.)

Federal district courts across the country and within this district have, overwhelmingly, rejected Respondents' position regarding the applicability of Section 1225(b)(2)(A) to detainees like Aleskerov, a noncitizen who previously entered and had been living in the United States prior to his detention.[5] *See, e.g., Hernandez v. Kunes*, No. 1:25-cv-1847, 2026 WL 411726 (M.D. Pa. Feb. 13, 2026) (Wilson, J.) (holding Section 1225(b) was inapplicable to petitioner); *Santana-Rivas v. Warden of Clinton Cnty. Corr. Facility*, No. 3:25-cv-1896, 2025 WL 3513152 (M.D. Pa. Dec. 8, 2025) (Wilson, J.) (adopting report and recommendation finding that Section 1225 was inapplicable to petitioner); *Patel v. O'Neil*, No. 3:25-cv-2185, 2025 WL 3516865, at *4 n.7 (M.D. Pa. Dec. 8, 2025)

---

[4] Section 1226(c) requires detention of noncitizens who are inadmissible or deportable because they have committed a criminal offense identified in this section. 8 U.S.C. § 1226(c).

[5] The court acknowledges that there are some district courts, as well as the Fifth Circuit Court of Appeals, who have agreed with Respondents' interpretation of Section 1225. (*See* Doc. 8, pp. 3–4.) *Buenrostro-Mendez v. Bondi*, No. 25-20496, --- F.4th ----, 2026 WL 323330 (5th Cir. Feb. 6, 2026). However, none of these decisions are binding on this court.

(collecting cases within the Third Circuit as of December 8, 2025); *Quispe v. Rose*, 3:25-cv-2276, 2025 WL 3537279 (M.D. Pa. Dec. 10, 2025) (holding that petitioner was improperly detained under Section 1225(b)(2)(A)); *Patel v. O'Neill*, 3:25-cv-2289, 2026 WL 323121 (M.D. Pa. Feb. 6, 2026) (same).  "The vast majority of courts confronting this precise issue have rejected the Government's interpretation, and the BIA's interpretation of *Hurtado*, as contradictory to the plain text of § 1225."  *Demirel*, 2025 WL 3218243 (citing *Ayala Amaya v. Bondi*, No. 25-16429, 2025 WL 3033880, at *2 (D.N.J. Oct. 30, 2025) (collecting cases)).

The court is persuaded by and agrees with the majority of federal district courts that have ruled on this issue to date in rejecting Respondents' interpretation of Section 1225(b)(2)(A).  Aleskerov's detention under Section 1225(b)(2)(A) is unlawful because Section 1225(b)(2)(A) "applies only to noncitizens who are actively, *i.e.*, affirmatively, 'seeking admission' to the United States."  *Bethancourt Soto v. Soto*, No. 25-cv-16200, --- F. Supp. 3d ----, 2025 WL 2976572, at *7 (D.N.J. Oct. 22, 2025).  Thus, this section simply does not apply to someone like Aleskerov, who has been residing in the United States for over two years.  *Id.* (collecting cases adopting the same conclusion).

In reaching this conclusion, the court holds that Respondents' interpretation of "seeking admission" violates the rule against surplusage and contradicts the plain meaning of the statutory text.  *Bethancourt Soto*, 2025 WL 2976572 at *5

(finding that respondents' interpretation "violates the rule against surplusage and negates the plain meaning of the text."); *see also Patel*, 2025 WL 3516865, at \*5 (citing *Centeno Ibarra v. Warden of Fed. Det. Ctr. Phila.*, No. 25-cv-6312, 2025 WL 3294726, at \*5 (E.D. Pa. Nov. 25, 2025)) (same). If Section 1225(b)(2)(A) applied to every "applicant for admission," the phrase "seeking admission" would become unnecessary and surplusage.[6] *Bethancourt Soto*, 2025 WL 2976572 at \*6 (citations omitted); *see also United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419 (2023) (explaining that "every clause and word of a statute should have meaning" and "no clause, sentence, or word shall be superfluous, void, or insignificant"). Further, "seeking admission" connotes "some affirmative, present-tense action" such that it "requires an act currently underway not a static condition." *Id.* at \*5 (citations omitted). Thus, Respondents' argument that Section 1225(b)(2)(A) does not require any "affirmative act" is contrary to the plain meaning of the words "seeking admission."[7]

---

[6] *Bethancourt Soto*, 2025 WL 2976572 at\*6, provides a helpful example of why Respondents' interpretation violates the rule against surplusage:

> [R]emoving the words "seeking admission" from § 1225(b)(2)(A) would not alter its meaning under Respondents' theory: "[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien ~~seeking admission~~ is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained[.]" That result is inconsistent with the principle that courts must interpret a statute to give meaning to "every clause and word" that Congress chose to include. *See* Polansky, 599 U.S. at 432, 143 S.Ct. 1720 (quotation marks omitted).

[7] Again, the examples provided by the court in *Bethancourt Soto*, 2025 WL 2976572 at \*6, are illustrative of why Respondents' argument fails:

Respondents' interpretation also makes Section 1226(c)'s mandatory detention provision superfluous and redundant. *Centeno Ibarra*, 2025 WL 3294726 at *6 ("Under the government's interpretation, § 1225 would require such mandatory detention regardless of criminal charges or convictions. If this was the case, Congress would have no need to create additional requirements for mandatory detention.").

In sum, Aleskerov is not currently "seeking admission" to the United States. That was his status in January 2024. At that time, an immigration official made the decision to release him in the United States on his own recognizance. Therefore, Section 1225(b)(2)(A) does not apply to him as he is not currently "seeking admission" to the United States.

Addressing Aleskerov's constitutional claims, it is undisputed that "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether

---

For example, one could deem every person in the country a "potential homebuyer," but they are not "seeking to buy a home," without taking some affirmative action towards that goal. Nor is every "employable adult" in the country "applying for a job," simply because jobs exist. Or, as Judge Ho explained in *Benitez*, "someone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as 'seeking admission' to the theater. Rather, that person would be described as already present there." *Benitez*, —— F.Supp.3d at ——, 2025 WL 2371588, at *7. Further, "[e]ven if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as 'seeking admission' ... at that point— one would say that they had entered unlawfully but now seek a lawful means of remaining there." *Id.*

their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (citations omitted). Thus, the court must determine what process is due to Aleskerov, who is currently subject to mandatory detention without a bond hearing, by applying the balancing test in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *Mathews* requires the court to weigh three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

The first factor weighs heavily in Aleskerov's favor because the "official action" has deprived him of his physical liberty. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) ("[T]he most elemental of liberty interests—the interest in being free from physical detention by one's own government."). The second factor similarly swings in Aleskerov's favor because he "is presently and *erroneously* detained under the mandatory detention provisions of § 1225, without an opportunity for a bond hearing." *Bethancourt Soto*, 2025 WL 2976572 at *8 (emphasis in original). As to the third factor, the court recognizes Respondents' interest in detaining noncitizens to ensure "the appearance of aliens at future immigration proceedings" and "preventing danger to the community." *Zadvydas*,

10

533 U.S. at 690.  Still, this factor weighs in favor of Aleskerov because Respondents do not contend that he has a criminal record, that he poses a danger to the community, or that he is a flight risk.  Accordingly, the *Mathews* factors weigh in Aleskerov's favor and the court finds that his mandatory detention without a bond hearing under Section 1225(b)(2)(A) violates his procedural due process rights.  *See Bethencourt Soto*, 2025 WL 2976572 at *8 ("Taken together, the Court finds that the *Mathews* factors weigh decisively in Petitioner's favor, and as such his mandatory detention under § 1225(b)(2)(A) violates his procedural due process rights.") (citations omitted); *Patel*, 2025 WL 3516865 at *6 (holding same).  Thus, the court will grant Aleskerov's petition and release him on his own recognizance as the United States Border Patrol did in January 2024.

## CONCLUSION

For these reasons, the court will grant Aleskerov's petition for writ of habeas corpus and order his immediate release.  An appropriate order follows.

> s/Jennifer P. Wilson
> JENNIFER P. WILSON
> United States District Judge
> Middle District of Pennsylvania

Dated: March 13, 2026

11